**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | CASE NO. _____ |
| | **PLAINTIFF'S COMPLAINT FOR:** |
| Plaintiff, | **1.) DECLARATORY JUDGMENT (NO DUTY TO DEFEND)** |
| v. | **2.) DECLARATORY JUDGMENT (NO DUTY TO INDEMNIFY)** |
| CAMBRIA COMPANY, LLC, | |
| Defendant. | **(JURY DEMAND REQUESTED)** |

Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), by and through its attorneys, alleges the following in support of its Complaint against Defendant, CAMBRIA COMPANY LLC ("Cambria").

## NATURE OF THE ACTION

1. This is an action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. PIIC seeks a determination of the parties' rights, duties, and obligations under certain primary and excess liability insurance policies issued by PIIC to Cambria.

## THE PARTIES

2. Plaintiff PIIC is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3. Defendant Cambria is a Minnesota limited liability company with its principal place of business in Minnesota. Upon information and belief, the LLC members of Cambria are Minnesota citizens, Mark Davis and Marty Davis.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and because it is a dispute between citizens of different states.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and because Cambria is subject to the Court's personal jurisdiction in this judicial district, and because the contracts at issue were issued to Cambria in this judicial district.

## GENERAL FACTUAL ALLEGATIONS
### *The PIIC Policies*

6.      PIIC issued Commercial Lines Policy Number PHPG124578 to Cambria, which policy was in effect from November 20, 2000 to November 1, 2001 ("2000-2001 Primary Policy"). The 2000-2001 Primary Policy contains a limit of $1,000,000 for each occurrence and in the aggregate.

7.      PIIC issued Commercial Lines Policy Number PHPK014656 to Cambria, which policy was in effect from November 1, 2001 to November 1, 2002 ("2001-2002 Primary Policy"). The 2001-2002 Primary Policy contains a limit of $1,000,000 for each occurrence and in the aggregate. (Collectively the 2000-2001 Primary Policy and the 2001-2002 Primary Policy are referred to as "the Primary Policies".)

8.      PIIC issued Commercial Excess Liability Policy Number PHUM106750 to Cambria, which policy was in effect from November 20, 2000 to November 1, 2001 ("2000 -

2001 Excess Policy"). The 2000-2001 Excess Policy contains a limit of $5,000,000 for each occurrence and in the aggregate.

9. PIIC issued Commercial Excess Liability Policy Number PHUB006108 to Cambria, which policy was in effect from November 1, 2001 to November 1, 2002 ("2001-2002 Excess Policy"). The 2000-2001 Excess Policy contains a limit of $5,000,000 for each occurrence and in the aggregate. (Collectively the 2000-2001 Excess Policy and the 2001-2002 Excess Policy are referred to as the "Excess Policies," and the Primary Policies and Excess Policies are referred to together as the "Policies".)

10. Under Coverage A of the Primary Policies' Commercial General Liability Coverage Part, PIIC promises to "pay those sums that [Cambria] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

11. The Primary Policies further provide that PIIC has the "duty to defend [Cambria] against any 'suit' seeking those damages. However, [PIIC] will have no duty to defend [Cambria] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

12. The Primary Policies state that the "insurance applies to 'bodily injury' and 'property damage' only if" (1) "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,' and (2) the 'bodily injury' or 'property damage' occurs during the policy period."

3

13.     Under the Primary Policies, "bodily injury" is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

14.     Under the Primary Policies, the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

15.     The Primary Policies e a c h contain a Total Pollution Exclusion with a Hostile Fire Exception (the "Total Pollution Exclusion"), which states in relevant part: "This insurance does not apply to:"

> **"f.     Pollution**
>  (1) 'Bodily injury' or ' property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time."

16.     Under the Primary Policies, "pollutants" is defined to mean "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed."

17.     Under Coverage A of the Excess Policies' Commercial Excess Liability Coverage Part, PIIC promises to "pay on behalf of [Cambria] the 'ultimate net loss' in excess of the 'applicable underlying limit', whether or not collectible, which [Cambria] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'occurrence'…which (a) Occurs, or

is committed during the policy period and (b) Occurs, or is committed in the "Coverage Territory".

18.     The Excess Policies define "ultimate net loss" in relevant part as "the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which we agreed or a final judgment"

19.     The Excess Policies define "applicable underlying limit" as "(a) If the policies of 'underlying insurance' apply to the 'occurrence' or 'offense', the greater of: (1) The amount of insurance stated in the policies of 'underlying insurance' in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or (2) the 'retained limit' shown in the Declarations or (b) if the policies of 'underlying insurance' do not apply to the 'occurrence' or 'offense,' the amount stated in the Declarations as the 'retained limit'."

20.     The Excess Policies further provide PIIC "will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend…[PIIC] will have the right and duty to defend any 'suit' for damages which are payable under Coverages A or B including damages wholly or partly within the "retained limit", but which are not payable by a policy of 'underlying insurance', or any other available insurance because (1) such damages are not covered; or (2) the 'underlying insurance' has been exhausted by the payment of claims."

21.     Under the Excess Policies "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time."

22.    Under the Excess Policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

23.    The Excess Policies contain a pollution exclusion which bars coverage for "'bodily injury'…arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants."  The exclusion goes on to state that PIIC "shall have no obligation under this policy:  (1) To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the 'pollution hazard'; or, (2) To pay any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law or relating to such injury or damage."

24.    Under the Excess Policies, "pollution hazard" is defined to mean "an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal pollutants, contaminants, irritants or toxic substances, including smoke, vapors, soot, fumes, acids or alkalis, and waste materials consisting of or containing any of the foregoing."

### *The Bodily Injury Lawsuits*

25.    Beginning in January 2020, Cambria was named as a defendant in lawsuits brought by persons alleging bodily injuries due to exposure to harmful dust and particles,

including respirable crystalline silica dust, in their workplaces from Cambria's quartz surface slabs (the "Bodily Injury Lawsuits").

26.    The Bodily Injury Lawsuits name Cambria and other manufacturers of quartz surface products as defendants.

27.    The plaintiffs in the Bodily Injury Lawsuits allegedly worked at third-party fabrication/installation companies which fabricated and installed quartz slabs, through cutting, grinding, and polishing slabs for use in homes and businesses.

28.    The Bodily Injury Lawsuits generally allege that the plaintiffs were exposed to harmful dust and particles, including respirable crystalline silica dust, in their workplaces caused by unsafe fabrication, drilling, polishing, and installation of quartz surface products, including Cambria's products.

29.    The Bodily Injury Lawsuits generally allege conspiracy, negligence, and that Cambria's products were defectively designed and "unreasonably dangerous." They generally include claims of negligence, strict liability (warning and design defect), fraudulent concealment, and breach of warranty, and some further include claims for loss of consortium.

30.    At least one hundred and thirty-five of the Bodily Injury Lawsuits brought against Cambria expressly allege plaintiff's first exposure to harmful substances from Cambria's products took place only after the expiration of Policies' effective dates (11/20/00 to 11/01/02).

31.    PIIC has disclaimed coverage as PIIC owes no defense or indemnity to Cambria for the Bodily Injury Lawsuits under the Policies for those Bodily Injury Lawsuits

that allege first exposure to harmful substances from Cambria's products after expiration of the Policies, and for all Bodily Injury Lawsuits based on application of the pollution exclusions in the Policies.

### *Coverage Lawsuits*

32.     On March 8, 2024, Cambria filed a lawsuit against PIIC in the United States District Court for the Central District of California, court file number 24-cv-01913-MEMF-MRW, seeking a declaration that PIIC must defend and indemnify Cambria against the Bodily Injury Lawsuits (the "California Lawsuit").

33.     The California Lawsuit complaint specifically listed and sought a declaration regarding thirty pending Bodily Injury Lawsuits, twenty-nine of which were pending in California and one which was pending in Texas.

34.     The California Lawsuit complaint specifically stated that '[t]he cases included in the above list of Bodily Injury Lawsuits may increase as additional suits are brought.  Cambria reserves the right to seek relief with respect to any additional suits, including through amendment of the Complaint if necessary."

35.     On March 27, 2024, PIIC filed a declaratory judgment lawsuit in the United States District Court for the District of Minnesota, court file number 0:24−cv−01075−JMB−DJF[1]. (the "Minnesota Lawsuit").

36.     The Minnesota Lawsuit complaint specifically listed and sought a declaration regarding thirty-three pending Bodily Injury Lawsuits.

---

[1] Upon transfer to the Central District of California, the Minnesota Lawsuit briefly proceeded under case no. 2:25-cv-00579-DDP-PD.

37. The Minnesota Lawsuit complaint specifically stated, that '[t]he cases included in the above list of Bodily Injury Lawsuits may increase as additional suits are brought. PIIC reserves the right to seek relief with respect to any additional suits, including through amendment of the Complaint if necessary."

38. The parties disputed which of the two lawsuits should proceed, and competing motions to transfer and/or to dismiss were filed in each case.

39. PIIC argued that, despite the fact that the California lawsuit was filed first, the case should proceed in Minnesota because the Minnesota court was best equipped to address all of the Bodily Injury Lawsuits, particularly those that were pending outside of California and those that may be filed in the future outside of California.

40. The court disagreed with PIIC and transferred the Minnesota Lawsuit to the Central District of California.

41. Due to the overlap between the two cases, the transferred Minnesota Lawsuit was dismissed without prejudice by agreement of the parties.

42. On May 14, 2025, Cambria filed an amended complaint in the California Lawsuit, removing all non-California Bodily Injury Lawsuits from the California Lawsuit and specifically seeking relief regarding sixty-nine specific Bodily Injury Lawsuits, all of which were pending in California state courts.

43. On May 20, 2025, Cambria withdrew its tender of six non-California Bodily Injury Lawsuits;

44.     However, Cambria continues to tender Bodily Injury Lawsuits to PIIC, including dozens of Bodily Injury Lawsuits pending in California, and the following Bodily Injury Lawsuits pending in other, non-California jurisdictions:

- *Wade B. Hanicker vs. 4 Power Quartz Tampa, LLC, et al.,* Case No. 25-CA-005019 (Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County, Florida), June 6, 2025;

- *Eduardo Brito Ocampo vs. 3M Company, et al.,* (Superior Court in and for Maricopa County, Arizona), May 8, 2025;

- *Jesus Subero v. Architectural Surfaces Group, LLC, et al.,* Case No. 25-2-11020-6-SEA (Washington State Superior Court, King County, Washington), April 4, 2025;

- *Jose Gomez, et al., v. Aetna Building Solutions, Inc., et al.,* 2025L008418, (Circuit Court of Cook Country, Illinois) July 2, 2025;

- *Jeffrey Wayne Rose v. Architectural Surfaces Group, LLC, et al.,* Case number 25-CI-00478 (Jessamine Circuit Court, Jessamine County, Kentucky) July 10, 2025.

- *Jorge Rosabel Velazquez Perez, et al. v. Architectural Surfaces Group, LLC, et al.*, Case No. A-25-925787-C (District Court, Clark County, Nevada), September 24, 2025;

- *Dewey Wolfersperger v. Architectural Surfaces Group, LLC, et al.*, Case No. 25CV52939 (Circuit Court of Multnomah, Oregon), September 26, 2025.

45.     These new tenders are not at issue in the California Lawsuit.

46.     PIIC has sought clarity from Cambria's counsel on this issue, and while Cambria has made clear that is no longer pursuing coverage for six non-California Bodily Injury Lawsuits it previously tendered, it has continued and will continue to tender new lawsuits to PIIC.

47.     In this case, PIIC seeks a declaration from this Court that will apply to all Bodily Injury Lawsuits not specifically identified in Exhibit A to Cambria's Amended

10

Complaint in the California Lawsuit, including but not limited to the Bodily Injury Lawsuits listed above, and including but not limited to all Bodily Injury Lawsuits currently tendered to PIIC and that may be tendered to PIIC in the future.

## COUNT I
### (DECLARATORY JUDGMENT – NO DUTY TO DEFEND)

1. PIIC restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

2. An actual controversy has arisen and now exists as between PIIC and Cambria in that Cambria contends PIIC owes it a duty to defend the Bodily Injury Lawsuits, and PIIC denies that it has a duty to defend.

3. PIIC desires a judicial determination that it owes no duty to defend Cambria for the Bodily Injury Lawsuits that allege first exposure to harmful substances from Cambria's products after expiration of the Policies.

4. PIIC desires a judicial determination that it owes no duty to defend Cambria for the Bodily Injury Lawsuits based on application of the pollution exclusions in the Policies.

5. PIIC is entitled to a judicial declaration that PIIC has no duty to defend Cambria under Policies.

## COUNT II
### (DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY)

6. PIIC restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

11

7.　　An actual controversy has arisen and now exists as between PIIC and Cambria in that Cambria contends PIIC owes it a duty to indemnify the Bodily Injury Lawsuits, and PIIC denies that it has a duty to indemnify.

8.　　PIIC desires a judicial determination that it owes no duty to indemnify Cambria for the Bodily Injury Lawsuits that allege first exposure to harmful substances from Cambria's products after expiration of the Policies.

9.　　PIIC desires a judicial determination that it owes no duty to indemnify Cambria for the Bodily Injury Lawsuits based on application of the pollution exclusions in the Policies.

10.　　PIIIC is entitled to a judicial declaration that PIIC has no duty to indemnify Cambria under the Policies.

## JURY DEMAND

11.　　PIIC demands a trial by jury of any factual issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, PIIC prays for the following relief:

A.　　A declaration that PIIC has no duty to defend Cambria with respect to the Bodily Injury Lawsuits;

B.　　A declaration that PIIC has no duty to indemnify Cambria with respect to the Bodily Injury Lawsuits;

C.　　For all costs and disbursements incurred herein in pursuing this action; and

D.    Such other relief that this Court deems just and proper.

Dated:  November 12, 2025

/s/ Stacy A. Broman
Stacy A. Broman, SB#192454
Erin D. Doran, SB#388439
MEAGHER + GEER, P.L.L.P.
33 South Sixth Street, Ste. 4300
Minneapolis, MN 55402
Tel:    (612) 338-0661
Fax:    (612) 338-8384
Email: sbroman@meagher.com
          edoran@meagher.com

*(Attorney for Plaintiff Philadelphia Indemnity Insurance Company)*