## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Philadelphia Indemnity Insurance
Company,

        Plaintiff,

   v.

Cambria Company LLC,

        Defendant.

Case No.  0:25-cv-04315-JRT-JFD

**DEFENDANT CAMBRIA COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER, DISMISS, OR STAY**

---

### INTRODUCTION

This is not the first time Philadelphia Indemnity Insurance Company ("Philadelphia") has sued Cambria in this District as an attempted end-run around Cambria Company LLC's ("Cambria") first-filed action in the Central District of California ("the California Action"). Cambria's California Action, which was first filed in March 2024, involves the same insurance-coverage issues presented by Philadelphia's current action, under the same insurance policies. It has been actively litigated by Cambria and Philadelphia for more than a year and a half, with summary judgment motions briefed, heard, and currently pending.

More than a year and a half ago, and a few weeks after Cambria's first-filed California Action, Philadelphia did this same thing, filing a parallel action in this District (the "First Minnesota Action"). Around the same time, Philadelphia also filed a motion to transfer the California Action to this District. Both of Philadelphia's previous attempts to relocate the Parties' insurance-coverage litigation in Minnesota failed.

On November 6, 2024, Judge Frimpong, presiding over the California Action, denied Philadelphia's transfer motion based on the first-filed rule. *Cambria Co., LLC v. Philadelphia Indem. Ins. Co.*, No. 24-cv-01913-MEMF-MRW, 2024 WL 5495286, *3 (C.D. Cal., Nov. 6, 2024) (case short-cited hereinafter as "*California Action*"). Judge Frimpong reasoned that the California Action and the First Minnesota Action "involve[d] substantially similar issues, as both lawsuits ask the same question—whether [Philadelphia] has the duty to defend or indemnify Cambria against lawsuits brought by third parties who allege that Cambria's products were defectively designed and unreasonably dangerous…." *Id.* at *4. Judge Frimpong also held there was no compelling reason to transfer the California Action under § 1404. *Id.* at *6.

Then, on January 21, 2025, Judge Bryan transferred Philadelphia's First Minnesota Action to California, concluding:

> The factors of the first-filed rule favor transferring this matter and, given the absence of compelling circumstances to support denying the first-filed party's preference, the Court concludes that transferring this matter to the District Court of the Central District of California is appropriate.

*Philadelphia Indemn. Ins. Co. v. Cambria Co., LLC*, No. 24-CV-01075 (JMB/DJF), 2025 WL 253388, at *2 (D. Minn. Jan. 21, 2025) (case short-cited hereinafter as "*First Minnesota Action*"). Judge Bryan explained that although it was not necessary to reach the transfer analysis under § 1404(a), "each of the section 1404(a) factors likely favors transfer," including the fact that "[d]enying the motion to transfer risks inefficient use of judicial resources, duplicative litigation, and conflicting judgments." *Id.* at *3 n.2. After

the transfer, Philadelphia's First Minnesota Action was dismissed without prejudice, given the overlap in issues with the existing California Action.

Now Philadelphia is at it again. On November 10, 2025, the day before Judge Frimpong was scheduled to hear argument on the Parties' Motions for Summary Judgment, Philadelphia filed this case (the "Second Minnesota Action"). It is substantively the same as the First Minnesota Action, involves the same parties, implicates the same insurance policies, and raises the same coverage issues in connection with the same underlying litigation.

The Court should grant this Motion and transfer this case to California, just like Judge Bryan did a year ago, and consistent with Judge Frimpong's denial of Philadelphia's motion to transfer the California Action to Minnesota. There is no basis to depart from those prior rulings, to disregard the first-filed rule and Cambria's California Action, or to proceed with duplicative litigation between the same parties over the same coverage issues under the same insurance policies in two different forums. This Motion should not have been necessary given these prior rulings.

## FACTUAL BACKGROUND

### I.      The Parties and Philadelphia's Insurance Policies.

 Cambria is a private family-owned business engaged in the manufacture and sale of quartz surface products. Cambria manufactures quartz slabs, primarily sized 10 feet by 5 feet, and common end uses for Cambria finished quartz products include countertops, islands, and tile in kitchens, bathrooms, and other residential and commercial spaces.

Philadelphia sold Cambria primary and excess insurance policies for two years, from November 20, 2000, through November 1, 2001, and November 1, 2001, through November 1, 2002. (Compl., ECF No. 1 (hereinafter "Compl.") ¶¶ 6-9.) Under the primary policies' Commercial General Liability ("CGL") Coverage, Philadelphia agreed to "pay those sums that [Cambria] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'…" (*Id.* ¶ 10.) Under Coverage A of Philadelphia's excess policies, Philadelphia promised to "pay on behalf of [Cambria] the 'ultimate net loss' in excess of the 'applicable underlying limit,' whether or not collectible, which [Cambria] becomes legally obligated to pay as damages because of 'bodily injury'…" (*Id.* ¶ 17.)

## II.   The Bodily Injury Lawsuits and Philadelphia's Denial of Coverage.

Beginning in January 2020, Cambria was named as one of many defendants in lawsuits brought by persons alleging bodily injuries due to exposure to harmful substances during the fabrication of stone slabs and the installation of stone countertops in homes or commercial spaces (the "Bodily Injury Lawsuits"). (Compl., ¶¶ 25-26.) The underlying plaintiffs worked for third-party fabrication and/or installation businesses, not Cambria. (Compl. ¶ 27.) None of the fabrication or installation work alleged in the underlying complaints was undertaken by Cambria. (*Id.*)

Nearly 400 underlying Bodily Injury Lawsuits have now been brought against Cambria and numerous other defendants and that number continues to grow. (Declaration of Bryan R. Freeman ("Freeman Decl.") Ex. A.) All but a handful of the underlying Bodily Injury Lawsuits are pending in California state court, in the counties of Los Angeles, Orange, and San Francisco. (*Id.*)

4

Cambria has tendered the Bodily Injury Lawsuits to Philadelphia and its other insurers,[1] and continues to do so as additional suits are filed. (Compl. ¶ 44.) Beginning on March 10, 2020, Philadelphia began denying coverage for the Bodily Injury Lawsuits based on the pollution exclusions in its insurance policies. (*Id.* ¶ 30.) Over the last five years, Philadelphia has denied coverage for every Bodily Injury Lawsuit based on the pollution exclusions in its Policies. Cambria maintains that Philadelphia's denial of coverage is wrongful, that Philadelphia's pollution exclusions do not apply, and that Philadelphia is in breach of its duty to defend. (*Id.* ¶ 32.)

### III.   Cambria's First-Filed Action in the Central District of California, and Philadelphia's First Minnesota Action.

On March 8, 2024, after unsuccessfully attempting to obtain Philadelphia's agreement to a tolling agreement, Cambria filed its insurance-coverage suit in the United States District Court for the Central District of California where a majority of the Bodily Injury Lawsuits were pending. (Compl. ¶ 32; *see* Freeman Decl., Ex. B.) In the California

---

[1] In addition to the California Action, in May 2025, Cambria was sued in the Central District of California by two of its other insurers, Regent Insurance Company and General Casualty Company of Wisconsin. Cambria then asserted counterclaims and brought third-party claims against six of its other primary and umbrella/excess insurers which insured Cambria over the last 25 years. That action is captioned *Regent Ins. Co. et al. v. Cambria Enterprises et al.*, No. 2:25-cv-4142 (C.D. Cal.) and pending before Judge Almadani, who recently heard argument on the insurers' motions for judgment on the pleadings. (*Id.*, ECF No. 107.) In addition to the *Regent* case, there are several other insurance-coverage cases pending in the Central District of California involving other policyholders who are also defendants in the Bodily Injury Lawsuits and their insurance companies: (i) *Surface Warehouse, LP v. Charter Oak Fire Ins. Co.*, No. 2:25-cv-03895-MRA-MAA (C.D. Cal.); (ii) *Sompo Am. Ins. Co. v. LX Hausys Am., Inc.*, No. 2:25-cv-02832-JFW-MAA (C.D. Cal.); (iii) *Pacific Shore Stones, LLC et al. v. Allied Property & Cas. Co., et al.*, No. 2:25-cv-04370-MRA-MAA; (iv) *Hanover Am. Ins. Co. v. Francini*, No. 2:23-cv-10047-MRA-MAA (C.D. Cal.).

Action, Cambria brings claims for breach of contract, declaratory judgment, and breach of the covenant of good faith and fair dealing. (Freeman Decl., Ex. B.) The central insurance-coverage issue presented by Cambria's California Action is whether Philadelphia's reliance on its pollution exclusions to deny coverage for the Bodily Injury Lawsuits is wrongful. (Freeman Decl., Ex. C ¶¶ 6, 48-54, 61, 72.)

Philadelphia responded to Cambria's first-filed California Action by filing a declaratory-judgment action in this District on March 27, 2024. (Freeman Decl., Ex. D.) Philadelphia's First Minnesota Action sought to resolve the same coverage issues Cambria sought to resolve in the California Action, with Philadelphia asking for a declaration that "it owes no duty to defend Cambria for the Bodily Injury Lawsuits based on application of the pollution exclusions in the Policies." (*Id.* ¶ 37, 42.) A week later, on April 3, 2024, in the California Action, Philadelphia moved to transfer the case to Minnesota under § 1404(a). (*Id.*, Ex. E #17.) Cambria opposed Philadelphia's transfer motion. (*Id.*, Ex. E #22.) And in the First Minnesota Action, Cambria moved to transfer, dismiss, or stay. (*Id.*, Ex. F #13.)

Philadelphia's efforts to relocate the parties coverage litigation in Minnesota failed. On November 6, 2024, Judge Frimpong denied Philadelphia's motion to transfer, applying the first-filed rule. *California Action*, 2024 WL 5495286. The court explained:

> The similarity of issues prerequisite requires only substantial similarity, and to determine whether two actions involve substantially similar issues, courts look to whether there is substantial overlap between the two suits. It is important to note that the inquiry whether *the issues* are substantially similar, not the claims asserted.

***

6

> Thus far, the two actions do involve substantially similar issues, as both lawsuits ask the same question—whether [Philadelphia] has the duty to defend or indemnify Cambria against lawsuits brought by third parties who allege that Cambria's products were defectively designed and unreasonably dangerous in California or Texas. As such, both actions will require either court to examine the same or similar issues.
>
> Because the lawsuits need only be substantially similar, and not identical, it is of no moment that the Minnesota Action includes two additional third-party California cases that this action does not, especially where the parties do not argue that these two additional cases present different issues than the other third-party California cases upon which the Complaint is based.

*Id.* at *4. The court further analyzed the § 1404(a) factors, concluded that the interests of justice weighed in favor of retaining the action in California, and held that "the section 1404(a) analysis does not otherwise present a compelling reason to transfer the case" to Minnesota. *Id.* at *6-7.

As to Philadelphia's First Minnesota Action, on January 21, 2025, Judge Bryan granted Cambria's motion and transferred the case to California. The court based its decision on the factors governing application of the first-filed rule:

> Concerning the first factor, the parties do not dispute the chronology of events; both parties agree that Cambria's action was filed in Central District of California nineteen days prior to the instant action. Nor do the parties dispute the second or third factors, and as previously noted in this Court's July 3, 2024 Order, both the parties and issues in this case and in the California action are substantially similar—if not functionally identical. Therefore, all three factors support the application of the first-to-file rule.

*First Minnesota Action*, 2025 WL 253388 at *3 (internal citations omitted). Judge Bryan further concluded there were no compelling circumstances for retaining jurisdiction in Minnesota, as Cambria did not act in bad faith or to initiate a "preemptive strike" when it filed the California Action. *Id.* at *3.

7

## IV.    Status of Cambria's First-Filed California Action.

The Parties have, thus, been actively litigating the California Action for nearly two years now. (Freeman Decl., Ex. E.) On May 14, 2025, pursuant to the Parties' stipulation, Cambria filed an Amended Complaint in the California Action, listing additional Bodily Injury Lawsuits then at issue, all of which were pending in California state courts and all of which alleged bodily injuries within Philadelphia's policy periods. (*Id.*, Ex. E #57-59.)

In June and July 2025, the Parties briefed their cross-motions for summary judgment in the California Action, with Cambria seeking partial summary judgment as to the duty to defend. (*Id.*, Ex. E #72.) The focus of the Parties' summary judgment motions is on whether the pollution exclusion in Philadelphia's policies precludes coverage for the Bodily Injury Lawsuits. (Freeman Decl., Ex. G.) Following briefing, Judge Frimpong held oral argument on the summary judgment motions on November 13, 2025. (Freeman Decl., Ex. E #78.) The Parties are currently awaiting Judge Frimpong's ruling.

## V.    Philadelphia's Second Minnesota Action.

On November 12, 2025, the day before the summary judgment hearing before Judge Frimpong in the Central District of California, and with no notice to Cambria, Philadelphia filed its Complaint in this Second Minnesota Action. (Compl., ECF No. 1.) Like the Complaint in its First Minnesota Action, Count One seeks a declaration that Philadelphia does not have a duty to defend Cambria in the underlying Bodily Injury Lawsuits based on its pollution exclusions. (*Id.*, Count One ¶ 4.) Count Two seeks a declaration that Philadelphia does not have a duty to indemnify on the same basis. (*Id.*, Count Two ¶ 9.)

8

The primary coverage issue presented by Philadelphia's new lawsuit is whether coverage for the underlying Bodily Injury Lawsuits is precluded by the pollution exclusion in its insurance policies. (*Id.* ¶¶ 15-16, 23-24, 31, Count One ¶ 4, Count Two ¶ 9.) This is the same coverage issue which has been fully briefed and argued before Judge Frimpong in the California Action, and it is the same core issue which was presented in Philadelphia's First Minnesota Action, which was transferred to California by Judge Bryan.

## **ARGUMENT**

The Court should follow the reasoning and ruling of Judge Bryan when he transferred Philadelphia's First Minnesota Action to California nearly a year ago. Philadelphia's Second Minnesota Act is essentially an improper attempt to obtain reconsideration of Judge Bryan's prior transfer order from January 2025. *Cf. Ry. Lab. Execs.' Ass'n v. Chicago & N. W. Transp. Co.*, 692 F. Supp. 1066, 1067 (D. Minn. 1988) (recognizing a transfer order should be reconsidered "only under the most impelling and unusual circumstances") (internal citations omitted).

As explained below, the first-filed rule applies because the California Action was filed 20 months before Philadelphia filed this Second Minnesota Action seeking to resolve the same insurance-coverage issues raised by cross-motions for summary judgment currently pending in the California Action. This case does not present compelling circumstances warranting disregard of the first-filed rule. Alternatively, the Court should transfer this lawsuit to the Central District of California under § 1404(a).

**I.      The Court Should Transfer This Case to the Central District of California Under the First-Filed Rule.**

Under the first-filed rule, "federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985); *Everest Indem. Ins. Co. v. Ro*, 200 F. Supp. 3d 825, 832-33 (D. Minn. 2016). The rule is intended to "conserve judicial resources and avoid conflicting rulings" by preventing lawsuits that are duplicative or redundant. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999). "The prevailing standard is that 'in the absence of compelling circumstances,' the first-filed rule should apply." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (citation omitted).

"Courts generally consider three factors before applying the first-to-file rule: (1) the chronology of events; (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Siruk v. Robinhood Fin. LLC*, 21-cv-0415 (PJS/DTS), 2021 WL 1997252, at *2 (D. Minn. Mar. 31, 2021). "If a court determines that the first-to-file rule applies to a case, then it has discretion to transfer, stay or dismiss the case." *Id*. These are the three factors applied by Judge Bryan in his ruling transferring Philadelphia's First Minnesota Action. *Minnesota Action*, 2025 WL 253388 at *2-3.

Here, all three factors strongly support Cambria. *First*, the chronology of events supports application of the first-filed rule because Cambria was clearly the first to file its Complaint in the Central District of California over a year and a half ago. *Second*, the parties in both actions are identical. *Third*, both lawsuits seek to resolve the same

10

insurance-coverage issues and claims under the same insurance policies at issue in the California Action, which has now advanced to summary judgment on the duty to defend. Accordingly, all three factors strongly weigh in favor of applying the first-filed rule. *See Slidell, Inc. v. Archer Daniels Midland Co.*, No. Civ. 02-4841 MJD/JGL, 2003 WL 22050776, at \*4-5 (D. Minn. Sept. 2, 2003) (granting motion to transfer venue based on first-filed rule where "the parties are identical in both actions, and it appears that both parties agree that the issues in both suits are sufficiently similar."). The Court here should apply these first-filed factors just as Judge Bryan did nearly a year ago. *Minnesota Action*, 2025 WL 253388 at \*3 ("[A]ll three factors support the application of the first-to-file rule.").

To the extent Philadelphia's Complaint articulates any basis for bringing yet another Minnesota coverage action, Philadelphia alleges that it seeks relief with respect to the additional Bodily Injury Lawsuits which have been filed beyond the 69 underlying cases specifically identified in the exhibit to Cambria's First Amended Complaint in the California Action.[2] (Compl. ¶ 47.) This rationale fails for three fundamental reasons.

*First*, the scope of the California Action is not limited to the 69 cases which were listed in Exhibit A to the First Amended Complaint. Like Cambria's initial California Complaint, the First Amended Complaint includes the following allegations:

---

[2] At the time Cambria amended its complaint in the California Action, Cambria withdrew its tender to Philadelphia for a handful of underlying suits. As explained in Cambria's summary judgment briefing, Cambria did so because most of those cases are already being defended by a different insurer and because withdrawing the tender for those few cases simplified the analysis for the court. (Freeman Decl., Ex. G at pg. 42 n.15.)

11

1.      This is an insurance-coverage action arising out of a multitude of *underlying lawsuits filed against Cambria by third parties alleging bodily injury from the fabrication and installation of quartz slabs manufactured and sold by Cambria for use in homes and businesses (the 'Bodily Injury Lawsuits').*

\*\*\*

31.      A list of the Bodily Injury Lawsuits *currently at issue* in this case is attached hereto as **Exhibit A** to this Amended Complaint. This amendment is without prejudice to Cambria's right to seek insurance coverage (defense or indemnity) with respect to underlying lawsuits which Cambria has not included based on the underlying complaints' alleged dates of exposure and bodily injury which post-date Philadelphia's policy periods ending on November 2, 2002.

\*\*\*

35.      *The cases included in the above list of Bodily Injury Lawsuits may increase as additional suits are brought. Cambria reserves the right to seek relief with respect to any additional suits*, including through amendment of the Complaint if necessary.

(Freeman Decl., Ex. C ¶¶ 1, 31, 35 (emphasis added.)) These allegations make clear that

the California Action is not strictly limited to the 69 underlying suits which were listed in

Exhibit A to the First Amended Complaint. Indeed, in the California Action, Cambria not

only seeks damages for breach of contract and the covenant of good faith and fair dealing,

but also requests *declaratory relief* with respect to Philadelphia's duties to defend and

indemnify. (*Id.* ¶¶ 67, 78.) And it stands to reason that Judge Frimpong's forthcoming

summary judgment ruling on the duty to defend under Philadelphia's insurance policies

will impact the Parties' rights and duties with respect to similarly situated underlying cases,

even if not identified in Exhibit A to the First Amended Complaint. It should be for Judge

12

Frimpong in the California Action to determine how her forthcoming ruling on the duty to defend under Philadelphia's policies applies to other underlying suits.

*Second,* under the first-filed analysis, even assuming that the claims in the California Action and the Second Minnesota Action are not identical, the law requires only substantial similarity between *the issues* involved in the two actions. Both Judge Frimpong and Judge Bryan recognized this legal standard. *California Action*, 2024 WL 5495286 at *4 ("The similarity of issues prerequisite requires only substantial similarity" and "the inquiry is whether the *issues* are substantially similar, not the claims asserted") (emphasis original); *First Minnesota Action*, 2025 WL 253388 at *3 ("[B]oth the parties and issues in this case and in the California action are substantially similar—if not functionally identical"). This is the correct legal standard and Philadelphia cannot possibly refute the fact that the insurance-coverage issues presented in this case—namely the application of the pollution exclusion—are substantially similar to those in the California Action.

*Third*, Philadelphia has made its argument before, and Judge Frimpong squarely rejected the continuing additional underlying cases as a basis for transferring the Parties' California coverage litigation to Minnesota. In seeking reconsideration of Judge Frimpong's denial of Philadelphia's motion to transfer, Philadelphia argued that the number of Bodily Injury Lawsuits had "increased to eighty-five, spreading across six different states, which include California, Texas, Oregon, Colorado, Washington, and Florida" and would "continue to balloon at an increasingly rapid pace." *California Action*, 2025 WL 945575, *3 (C.D. Cal. Jan. 9, 2025). Judge Frimpong's order denying reconsideration explained:

13

> [Philadelphia] already introduced the continuous growth of Silica Lawsuits—or the possibility thereof—in its previous Motion to Transfer Venue. The November Order addressed this potential in growth in the number of Silica Lawsuits: The Court held that the fact that there are additional actions not yet before this Court or in the Minnesota Action 'would not necessarily be outcome determinative,' as this Court would nevertheless need to determine whether those additional actions 'create[] new issues that do not substantially overlap with the issues before either this Court or the District of Minnesota.' Because [Philadelphia] failed to show that the increase in Silica Lawsuits constitute a material difference in fact or a new material fact, there is no grounds on which to reconsider the Court's previous Order. This alone is sufficient to deny this Motion.

*Id.* at *3. Philadelphia's apparent rationale for yet again filing a duplicative coverage case in Minnesota should be rejected for the same reasons Judge Frimpong rejected that rationale a year ago.

Ultimately, this case does not come close to presenting "compelling circumstances" for disregarding the first-filed rule. *Goodyear Tire*, 920 F.2d at 488-89. Courts have identified two such potential circumstances: (1) where "the party that filed the first suit was 'on notice' that the other party intended to file its lawsuit imminently" and (2) "if the first lawsuit was an action for declaratory judgment, which 'may be more indicative of a preemptive strike than a suit for damages or equitable relief.'" *Ro*, 200 F. Supp. 3d at 833 (quoting *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).

Neither circumstance exists here. First, Philadelphia did not put Cambria "on notice" that it was planning to file a suit before Cambria filed the California Action back in March 2024. To the contrary, Cambria filed the California Action after first attempting to obtain Philadelphia's agreement to a tolling agreement. *California Action*, 2024 WL 5495286 at *5 ("These facts do not indicate that Cambria filed a lawsuit because it had

14

'specific, concrete indications that a suit by defendant was imminent'….If anything, Cambria was the party that made specific indications that a lawsuit was imminent given its insistence that the parties reach a tolling agreement by March 7, 2024."). Second, the first suit, Cambria's California Action, states claims for breach of contract and bad-faith denial of insurance benefits, in addition to seeking declaratory relief. (*Id.*, Ex. C ¶¶ 57-86.) As Judge Bryan held, there was no evidence of bad faith or a preemptive strike on the part of Cambria in filing its California Action. *Minnesota Action*, 2025 WL 253388 at \*3 ("The Court finds no such evidence of bad faith here.").

Because Cambria's California Action was first filed, and compelling circumstances do not exist for disregarding the first-filed rule, this Court should transfer this lawsuit to the Central District of California or, alternatively, dismiss or stay the case.

## II.   Alternatively, the Court Should Transfer this Action to the Central District of California Under § 1404(a).

### A.   The Court Should Follow Judge Bryan's Order Transferring the First Minnesota Action to California.

Because the first-filed rule applies, the Court need not reach or analyze § 1404(a). *See Slidell,* 2003 WL 22050776, at \*5 (declining to consider section 1404(a) because it had already concluded that the matter 'should be transferred pursuant to the first-filed rule"); *Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 17-3149-CV-S-BP, 2017 WL 9717215, at \*2 (W.D. Mo. July 6, 2017) (same).

But even if the Court were not to transfer this case under the first-filed rule, then it should do so under 28 U.S.C. § 1404(a), following the analysis of Judge Bryan:

15

> [T]he Court observes that each of the section 1404(a) factors likely favor transfer. First the parties do not dispute that venue is proper in both districts. Second, the only Minnesota party (Cambria) prefers to litigate in California. Third, the interests of justice would strongly favor transfer because the central District of California has retained jurisdiction over the parallel lawsuit. Denying the motion to transfer risks inefficient use of judicial resources, duplicative litigation, and conflicting judgments.

*Minnesota Action*, 2025 WL 253388 at *3 n.2. While the Court need not proceed further and undertake the forum analysis already performed by Judge Bryan and Judge Frimpong, the following discussion sets forth the arguments and record that support transfer of this case to the Central District of California under § 1404(a).

**B.      The Section 1404(a) Factors Favor Transfer to California.**

District courts have discretion to transfer cases, for convenience and in the interests of justice, to any other district where the action might have been brought. 28 U.S.C. § 1404(a). Here, Philadelphia's Second Minnesota Action could have been brought in the Central District of California, where the same insurance-coverage issues are currently being litigated between the Parties under the same insurance policies. Accordingly, the Court considers the "convenience of parties and witnesses" and the "interests of justice" in deciding whether to transfer it. 28 U.S.C. §1404(a); *see also Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009) ("If [the action might have been brought in the proposed transferee district], the Court must [then] consider the convenience and interest of justice factors." (quotations omitted)). Here, these factors weigh heavily in favor of transfer.

### 1.    Convenience of the Parties.

The "convenience of the parties" factor supports transferring this case to California. Cambria chose to file its coverage action in California, Cambria does business in California, and it is already litigating the hundreds of underlying Bodily Injury Lawsuits there. In short, by virtue of its first filing, Cambria affirmed that California was a sufficiently convenient venue to pursue this coverage litigation against Philadelphia.

Philadelphia also conducts business in California, and Philadelphia's coverage counsel is located in Irvine, California, within the Central District of California. (Freeman Decl. ¶ 9.) There can be no inconvenience to Philadelphia in having its attorneys appear in court within the district in which they work. *See Hoban v. U.S. Food & Drug Admin.*, Civil No. 18-269 (JNE/LIB), 2018 WL 3122341, at *2 (D. Minn. June 26, 2018) ("While the convenience of counsel is not a factor to consider in a § 1404 analysis, the comparative costs to the parties of litigating in each forum is a factor. And the convenience to counsel of each forum impacts these costs." (internal quotations and citation omitted)).

Additionally, Philadelphia is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Compl. ¶ 2.) Philadelphia has no greater connection to Minnesota than to California, so any inconvenience to Philadelphia would be the same in either jurisdiction. *See Nautilus Ins. Co. v. A. Moore Const. & Roofing, Inc.*, Civ. 10-1211 (RHK/SRN), 2010 WL 2985929, at *3 (D. Minn. July 27, 2010) (transfer appropriate where it will "substantially increase Defendants' convenience while having minimal impact on [Plaintiff's] convenience."); *Hartford Fire Ins. Co. v. Retail Management Solutions, LLC*, Civil No. 13-723 ADM/FLN, 2014 WL 4722366, at *2 (D. Minn. Sept. 22,

17

2014) (lawsuit transferred in part because "although Washington is further than Minnesota from Connecticut, Hartford will have to travel some distance regardless of whether the matter is litigated in Minnesota or Washington.").

Finally, any claimed inconvenience in litigating the Parties' claims in California is substantially minimized by the fact that this is an insurance-coverage case, and the key issues are primarily a function of documents, namely Philadelphia's insurance policies, the underlying pleadings in the Bodily Injury Lawsuits, and insurance caselaw. This point is most evident from the fact that the first major issue to be decided in this case is whether Philadelphia has breached its duty to defend by denying defense coverage for the underlying Bodily Injury Lawsuits based on the pollution exclusion. This duty-to-defend issue is the core issue before the Court on the Parties' pending cross-motions for summary judgment, which are based in large part on the insurance policies, the underlying complaints, and related documents. (*See* Freeman Decl., Ex. G.)

Furthermore, the indemnification issues in the case are not ripe for decision because there are not settlements or judgments upon which to seek indemnification under the Policies—often liability coverage cases like this one are phased with indemnification issues stayed pending resolution of the underlying matters. *See, e.g.*, *Capitol Indem. Corp. v. Especially for Child., Inc.*, No. Civ.01-2425 RHK/AJB, 2002 WL 31002849, at *8 (D. Minn. Aug. 29, 2002) (holding that "the question of the duty to indemnify is not ripe" where "genuine issue[s] of material fact remain concerning [insured's] underlying liability"); *United Fire & Cas. Co. v. Fuhr Int'l, LLC*, No. 05-6049-CV-SJ-ODS, 2006 WL 3691256, at *4 (W.D. Mo. Dec. 12, 2006) ("A determination about Plaintiff's duty to

indemnify cannot be made until the underlying suit is concluded and this Court can determine whether and on what basis [underlying plaintiff] prevails."). There is simply no meaningful inconvenience presented to Philadelphia in litigating insurance-coverage disputes in California. Indeed, this is where five other coverage cases involving the same underlying Bodily Injury Lawsuits are being litigated by a multitude of insurance companies and policyholders. (*See supra* pg. 5 n.1.)

### 2.    Convenience of the Witnesses.

The "convenience of witnesses" factor "determines the relative ease of access to sources of proof." *Nelson v. Master Lease Corp.,* 759 F. Supp. 1397, 1402 (D. Minn. 1991) (quotations omitted). Under this factor, courts consider the "number of essential nonparty witnesses, their location and the preference of courts for live testimony as opposed to depositions." *Id.*; *see also Austin*, 677 F. Supp. 2d at 1138 ("[T]he Court focuses on non-parties."). This factor is not, however, a "contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts." *Nelson*, 759 F. Supp. at 1402.

In this insurance-coverage action, Cambria does not expect that witnesses will be needed to interpret Philadelphia's Policies, which presents questions of law. *See Comprehensive Medical Ctr., Inc. v. State Farm Mut. Auto. Ins.*, No. LA CV17-07672-JAK (JPR), 2023 WL 7312970, at *7 (C.D. Cal. Sept. 5, 2023) ("Under California law, the interpretation of an insurance policy is a question of law that a court decides."); *Hartford Fire Ins. Co. v. Retail Mgmt. Sols., LLC*, Civil No. 13-723 ADM/FLN, 2014 WL 4722366, at *2 n.2 (D. Minn. Sept. 22, 2014) ("The parties agree that convenience for witnesses is a

19

neutral factor because this insurance coverage dispute will likely be decided on summary judgment, obviating the need for witnesses.").

For indemnification issues, potential non-party witnesses include the individual underlying plaintiffs in the Bodily Injury Lawsuits, who have information regarding their respective dates of exposure and alleged injuries, which will impact the scope and amount of indemnification coverage available for each lawsuit. The vast majority of underlying plaintiffs reside in California. As for defense issues, to the extent issues arise regarding Philadelphia's duty to reimburse Cambria's unpaid defense fees and costs, Cambria's underlying defense attorneys are similarly located in California. Litigating in California would be more convenient for potential non-party witnesses.

### 3. Interests of Justice.

The interest-of-justice factor—"perhaps the most important"—strongly favors transfer as well. *See Nelson*, 759 F. Supp. at 1402; *see also Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1996) ("The interest of justice has been deemed the most important §1404(a) factor."). When analyzing the interest-of-justice factor, courts consider:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 696 (8th Cir.1997). The "ability to enforce a judgment" and "obstacles to a fair trial" are not issues here. All of the other factors strongly favor transfer to California.

20

**Judicial Economy:** Judicial economy includes avoiding the simultaneous litigation of similar cases in different districts: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that §1404(a) was designed to prevent." *Durabla Mfg. Co. v. Cont'l Cas. Co.*, No. 98-1596 JRT RLE, 1998 WL 957250, at *5 (D. Minn. Oct. 26, 1998) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960)). Transferring cases for consolidation streamlines discovery and avoids inconsistent results. *See id.* at *5. Here, a lawsuit between the same parties raising the same insurance issues under the same insurance policies is pending in the Central District of California, so judicial economy will clearly be served by consolidating the two cases. *See Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999) ("[T]he court finds untenable the simultaneous pendency of two separate actions relating to the same facts in different courts.").

**Plaintiff's Choice of Forum:** Although Philadelphia chose this forum, it did so more than a year and a half after Cambria first filed the California Action. Furthermore, for all of the reasons addressed above under the first-filed analysis, the Court should afford Philadelphia's choice of forum little, if any, weight. *See also Skyline Displays, Inc. v. Sweeney*, 634 F. Supp. 746, 748 (D. Minn. 1986) ("A plaintiff's choice of forum is due some deference . . . . Where a related case is pending in another district, however, the

21

interests of justice are better served when transfer is aimed at resolving in one litigation all legal contentions." (internal citation and quotations omitted)).

**Comparative Costs to the Parties:** There is no basis for concluding that transfer of this case to the Central District of California will burden Philadelphia with any appreciable extra expense as compared to litigating this case in Minnesota. Philadelphia is a large insurance company doing business in all 50 states. (Freeman Decl. ¶ 10.) Philadelphia's law firm in the California Action has an office and has attorneys in Orange County, within the Central District of California,[3] and is actively litigating the California Action. (Freeman Decl., Ex. E.) Thus, Philadelphia will incur minimal travel expense for appearances in California and certainly will not incur significantly less expense if the case were litigated in Minnesota.

In addition, the costs of written discovery, beyond those already incurred, and depositions, to the extent necessary, will be substantially the same in California. Further document discovery will be conducted electronically and will function the same regardless of venue. And for depositions, Philadelphia will save money through transfer of the case to California. This is because Philadelphia's counsel will have to travel to Minnesota to depose Cambria's employees regardless of where the case proceeds, and the same is true of Philadelphia's witnesses. But the majority of potentially relevant third-party witnesses are in California, where Philadelphia's counsel is located. This factor favors transfer.

---

[3] www.tresslerllp.com/offices/locations-detail/orange-county-ca (last visited Dec. 1, 2025).

22

**California Legal Issues Should Be Adjudicated in California:** Because this case is about insurance coverage for underlying California lawsuits involving injuries allegedly sustained by California residents in California, California law should apply. *See Pep Boys Manny Moe & Jack of California v. Old Republic Ins. Co.*, 98 Cal. App. 5th 329, 348 (2023) ("Where a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved." (quotations omitted)); *UMG Recordings, Inc. v. Am. Home Assurance Co.*, No. CV 04-04756 DDP (RNBx), 2004 WL 7340621, at *7 (C.D. Cal. Nov. 5, 2004) ("In the instant case, all of the underlying incidents involving the TVT lawsuit, which gave rise to the instant case, occurred in New York. Based on the fact that the underlying liability arose from conduct in New York, the Court finds that this factor in the analysis weighs in favor of applying New York law.").[4] While Judge Frimpong made clear in denying Philadelphia's motion to transfer that it was not deciding the state law applicable to Philadelphia's pollution exclusions, the court concluded that its familiarity with California favored retaining the case in California, referring to *Pep Boys*. *California Action*, 2024 WL 5495286 at *7 ("A very important factor in assessing the interests of justice—the state most

---

[4] *See also James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956, 964-66 (C.D. Cal. 2018) (applying Civil Code § 1646 where underlying action was in California, and holding that the place where the insurance contract was "to be performed" under § 1646 was where the defense coverage was to be provided, such that California insurance law applied); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 650 (1993) ("California's rule applies here because it is the principal location of the risk involved . . . ."); *Goodyear Tire*, 726 F. Supp. at 744 (applying Minnesota insurance law where underlying accident for which insurance was sought occurred in Minnesota).

familiar with the governing law—appears to swing in favor of retaining the action."). This choice-of-law issue is currently at issue and being decided by Judge Frimpong in the Parties' pending cross-motions for summary judgment on the duty to defend. (*See* Freeman Decl., Ex. G.)

Taken together, the circumstances surrounding the Parties' dispute—and in particular Cambria's long-pending first-filed lawsuit in California—favor transfer of this coverage action to the Central District of California under 28 U.S.C. § 1404(a).

## <u>CONCLUSION</u>

There is no reason to depart from the prior ruling of Judge Bryan when he ruled on the same issues before the Court here. For all the foregoing reasons, Cambria respectfully requests that the Court transfer this action to the Central District of California or, in the alternative, dismiss or stay this case.

Dated: December 19, 2025          **MASLON LLP**

By: *s/ Bryan R. Freeman*
    Bryan R. Freeman (#0387154)
    Judah A. Druck (#0397764)
    225 South Sixth Street, Suite 2900
    Minneapolis, MN  55402
    (612) 672-8200
    bryan.freeman@maslon.com
    judah.druck@maslon.com

**ATTORNEYS FOR DEFENDANT CAMBRIA COMPANY LLC**