**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>    Plaintiff,<br>  v.<br><br>CAMBRIA COMPANY, LLC,<br><br>    Defendant. | **CASE NO. 0:25-cv-04315-JRT-JFD**<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CAMBRIA COMPANY, LLC'S MOTION TO STAY, DISMISS OR TRANSFER** |

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") respectfully submits its Opposition to Defendant Cambria Company, LLC's ("Cambria") Motion to Stay, Dismiss, or Transfer ("Motion").

**INTRODUCTION**

PIIC filed this suit because Cambria's own actions limited the scope of its California action (currently proceeding before the U.S. District Court for the Central District of California as Case No. 2:24-cv-01913, hereinafter, the "California Action") to sixty-nine underlying lawsuits pending in California. Since unilaterally limiting the scope of the California Action, Cambria has continued to tender more than two hundred underlying California and non-California lawsuits to PIIC. Because coverage for the newly tendered lawsuits will not be decided by the California court – which has cross-motions summary judgment under advisement – PIIC was forced to bring this lawsuit to obtain complete resolution of the parties' disputes.

This lawsuit is not parallel to the California Action, and thus the first-filed rule has no application.  There is no overlap between the two lawsuits. Rather, any adjudication of coverage in the California Action will only apply to sixty-nine cherry-picked underlying lawsuits specifically identified in Exhibit A to Cambria's Amended Complaint on file therein.  Those sixty-nine underlying lawsuits are not a part of this lawsuit, and a declaration here will resolve the dispute of coverage for all of the underlying lawsuits, except for the select few identified by Cambria in the California Action.

Cambria's Motion is a blatant attempt for Cambria to "have its cake and eat it too." After Judge Bryan transferred PIIC's first Minnesota case to the Central District of California, PIIC stipulated to dismiss that transferred case due to the substantial overlap with the California Action filed by Cambria – both complaints then generally sought to resolve the entire insurance coverage dispute over all of the pending underlying silica-dust lawsuits. Then, when dispositive motions were imminent, Cambria made the strategic decision to amend its California Action to limit its scope to sixty-nine specifically listed underlying lawsuits pending in California, despite having previously tendered numerous underlying actions pending in various jurisdictions other than California. Cambria then used the fact that the California Action involved exclusively underlying California cases to argue that California law necessarily applied to the insurance coverage dispute. Now, after the California court suggested a tentative ruling in Cambria's favor, Cambria wants to reverse course on its decision to limit the California Action to adjudicating the coverage dispute only as respects underlying California cases and rather litigate any remaining disputes, irrespective of whether they are pending in California or beyond, in California.

2

The Court should not permit Cambria to have it both ways – it cannot unilaterally limit the scope of the California Action when strategically beneficial and then complain when PIIC seeks a full resolution of the parties' dispute by litigating coverage for the cases that Cambria excluded in Cambria's home state.

Further, even if the Court has some concern about whether the two lawsuits are parallel, it should not apply the first-to-file rule in this case. As the Eighth Circuit has repeatedly recognized, the first-to-file rule is not rigid or inflexible, and courts should not apply it where compelling circumstances warrant an exception. Here, such an exception is warranted for three primary reasons: (1) Cambria's own actions limited the scope of the California Action and necessitated a second lawsuit, (2) Minnesota is the more appropriate venue to decide a dispute over a Minnesota contract with a Minnesota company, involving underlying lawsuits in many different states, and (3) *only* Minnesota has jurisdiction to decide whether there is coverage for all tendered underlying cases. The Court should therefore deny Cambia's Motion because Minnesota is the most appropriate and complete forum for this dispute.

## II.    FACTUAL BACKGROUND

PIIC issued primary liability policy nos. PHPG124578, effective November 20, 2000, to November 1, 2001; and PHPK014656, effective November 1, 2001, to November 1, 2002, to Cambria. (Complaint, Dkt. 1, ¶6). PIIC also issued commercial excess policy nos. PHUM106750, effective November 20, 2000, to November 1, 2001; and PHUB006108, effective November 1, 2001, to November 1, 2002 (collectively, the PIIC policies are referred to as the "Policies"), to Cambria. (Complaint, Dkt. 1, ¶7).

Cambria is a Minnesota limited liability company. (California Amended Complaint, Broman Dec., Ex. 1, ¶9). Cambria's principal place of business is in Minnesota, and Cambria's LLC members are Minnesota citizens. (*Id.*). Moreover, Cambria's corporate headquarters is located in Minnesota. (Broman Decl., Ex. 2, ¶5). PIIC's principal place of business and corporate headquarters are in Bala Cynwyd, Pennsylvania. (Broman Dec., Ex. 3, Declaration of Ann Conroy ("Conroy Decl."), ¶4). At the time the Policies were issued in 2000 and 2001, PIIC's representative working with Cambria's broker in connection with the negotiation of the policy terms was located in Minnesota. (Conroy Decl., ¶5). Currently, PIIC underwrites commercial risks in Bala Cynwyd, Pennsylvania, and other locations. (Conroy Decl., ¶9).

At the time the Policies at issue were issued in 2000 and 2001, they would have been issued out of Illinois or Pennsylvania. (Conroy Decl., ¶8). The Policies were issued through The MacKenzie Agency, an insurance broker located in St. Peter, Minnesota. (Conroy Decl., ¶6). The MacKenzie Agency is currently located in St. Peter, Minnesota. (Broman Decl., ¶7).

As of January 1, 2026, Cambria had tendered hundreds of silica-dust cases (the "Bodily Injury Lawsuits") to PIIC. (Morrison Dec., ¶4). While a majority of those cases are pending in California state court, several are not, including cases pending in Florida, Arizona, Washington, Illinois, Kentucky, Nevada and Oregon. (Doc. 1, Complaint, ¶44). PIIC has denied any duty to defend or indemnify Cambria in the Bodily Injury Lawsuits under the Policies. (Dkt. 1, Complaint, ¶31). PIIC's position is based on the fact that the pollution exclusions contained in the Policies bar coverage for the Bodily Injury Lawsuits,

4

and because some allege that the plaintiff's first exposure to silica occurred *after* PIIC's policies expired. (*Id.*). Accordingly, on November 11, 2025, PIIC filed the present declaratory relief action here in Minnesota. (Dkt. 1, Complaint).

## A.   The Bodily Injury Lawsuits and Philadelphia's Denial of Coverage.

Beginning in January 2020, Cambria was named as one of many defendants in the Bodily Injury Lawsuits – lawsuits brought by persons alleging bodily injuries due to exposure to harmful substances during the fabrication of stone slabs and the installation of stone countertops in homes or commercial spaces. (Dkt. 1, Compl., ¶¶25-26.) The underlying plaintiffs worked for third-party fabrication and/or installation businesses, not Cambria. (*Id.,* ¶27.) None of the fabrication or installation work alleged in the Bodily Injury Lawsuits was undertaken by Cambria. (*Id.)*

Hundreds of underlying Bodily Injury Lawsuits have now been brought against Cambria and numerous other defendants, and that number continues to grow. (Dkt. 13-1, Ex. A.) Although most of the current cases are pending in California, several are not, including cases pending in Florida, Arizona, Washington, Illinois, Kentucky, Nevada, and Oregon. (*Id.;* Dkt. 1, ¶44) PIIC has denied coverage for the Bodily Injury Lawsuits pursuant to application of the pollution exclusions in its Policies. (*Id.* ¶31.)

## B.   California Action

On March 8, 2024, Cambria filed the California Action in the United States District Court for the Central District of California. (Dkt. 1, Complaint ¶ 32). In the California Action, Cambria brings claims for breach of contract, declaratory judgment, and breach of the covenant of good faith and fair dealing. (Dkt. 13-1, Ex. B.) Cambria's original

complaint sought a declaration that the pollution exclusions did not apply to bar coverage and that PIIC has a duty to defend Cambria against the pending Bodily Injury Lawsuits. (Dkt. 13-1 at 18-19, Ex. B, ¶ 50, 61.) The original complaint specifically identified thirty-two lawsuits currently pending, including one pending in Texas, but did not include limiting language suggestive that it sought to adjudicate the coverage dispute only as respects the thirty-two identified Bodily Injury Lawsuits. (Dkt. 13-1 at 15-16, Ex. B, ¶ 31.)

Shortly after Cambria filed the California Action, PIIC filed a declaratory-judgment action in this District on March 27, 2024 (the "First Minnesota Action"). (Dkt. 13-1, Ex. D.) PIIC's First Minnesota Action also sought to resolve the parties' insurance coverage dispute. (*Id.*) PIIC filed the First Minnesota Action because it maintained that it was more complete – it would resolve coverage for all pending and future Bodily Injury Lawsuits, no matter where they were pending, and because Minnesota had stronger connections to the insurance coverage dispute. (Broman Dec., Ex. 4, PIIC's Opposition to Cambria's Motion to Dismiss).

PIIC then moved to transfer the California Action to Minnesota under § 1404(a). (Dkt. 13-1*,* Ex. E) Cambria opposed PIIC's transfer motion. (*Id.,* Ex. E #22.) And in the First Minnesota Action, Cambria moved to transfer, dismiss, or stay the case. (*Id.,* Ex. F #13.) PIIC's efforts to proceed in Minnesota failed because the courts in California and in Minnesota found that the two lawsuits were parallel. (Broman Dec., Ex. 5, 6). On November 6, 2024, Judge Frimpong denied PIIC's motion to transfer, applying the first-filed rule. (Broman Dec., Ex. 6). She found that the California Action and First Minnesota Action were substantially similar, holding "both lawsuits ask the same question—whether

6

[PIIC] has the duty to defend or indemnify Cambria against lawsuits brought by third parties who allege that Cambria's products were defectively designed and unreasonably dangerous in California or Texas." (*Id.,* p. 8). As to PIIC's First Minnesota Action, after allowing the California Court to rule, Judge Bryan granted Cambria's motion and transferred the case to California, finding that the two cases were functionally identical. (Broman Dec., Ex. 5).

**C.      Cambria's Procedural Gamesmanship.**

After Judge Bryan transferred the First Minnesota Action to California, PIIC agreed to dismiss the transferred lawsuit because it was substantially the same as the California Action filed by Cambria. (Dkt. 1, ¶41). At the time, both lawsuits sought declarations regarding *all* tendered lawsuits. (*Id.*). PIIC agreed that the California Action, as it then stood, would resolve the entire dispute between the parties. However, that has now changed because Cambria unilaterally decided that limiting the scope of the California Action to the adjudication of coverage for sixty-nine lawsuits pending in California gave it the best chance of having California law apply to the dispute and, therefore, increased the likelihood of a favorable result.

In the Spring of 2025, Cambria decided to withdraw its tenders to-date of all Bodily Injury lawsuits pending in jurisdictions other than California, informing PIIC that it no longer sought insurance coverage from PIIC for those lawsuits. (Morrison Dec., Ex. 1, p. 2). Cambria then amended its complaint to make clear that it only applied to sixty-nine lawsuits specifically identified in Exhibit A to the amended complaint. (Broman Dec., Ex 1). The amended complaint states:

31. A list of the Bodily Injury Lawsuits currently at issue in this case is attached hereto as Exhibit A to this Amended Complaint. This amendment is without prejudice to Cambria's right to seek insurance coverage (defense or indemnity) with respect to underlying lawsuits that Cambria has not included, based on the underlying complaints' alleged dates of exposure and bodily injury that post-date Philadelphia's policy periods ending on November 1, 2002.

(*Id.*) Cambria then used its decision to limit the scope of the California Action to argue that California law applied to the California Action. (*Id.* at ¶50-53; Broman Dec., Ex. 7, California Summary Judgment Motion). Contrary to Cambria's current assertions, Cambria's amendments limited the California Action to the sixty-nine lawsuits listed in Exhibit A to the Amended Complaint. (*Id.*). Cambria has made no effort to amend its complaint again in the California Action to seek a broader declaration. Cambria has repeatedly argued that, because all the lawsuits at issue in the California Action are California lawsuits, California law should apply. (Broman Dec. Ex. 7, p. 14, 35). Despite withdrawing its tender of the six pending non-California lawsuits in April 2025, Cambria has subsequently continued to tender new California *and non-California* Bodily Injury Lawsuits to PIIC. (Morrison Dec., Ex. 1, p. 1). At no time has Cambria sought a declaration regarding these newly tendered lawsuits in the California Action.

In June and July 2025, the parties briefed their cross-motions for summary judgment in the California Action, with Cambria seeking partial summary judgment as to the duty to defend. (Dkt. 13-1, Ex. E #72, Broman Dec., Ex. 7.) The focus of the parties' summary judgment motions is on whether Minnesota or California laws interpret the pollution exclusion differently and which law should apply to that issue. (*Id.*) Cambria took the position that there is a conflict between California and Minnesota law regarding the

8

application of the pollution exclusion. (*Id.*, p. 21). Cambria argues that California law applies because the sixty-nine underlying lawsuits are pending in California. (*Id.*, p. 20-24). Following the briefing, Judge Frimpong held oral argument on the summary judgment motions on November 13, 2025. (Dkt. 13-1, Ex. E #78.) The parties are currently awaiting Judge Frimpong's ruling.

**D.     PIIC's Second Minnesota Action.**

On November 12, 2025, PIIC filed this lawsuit seeking a declaration regarding all tendered lawsuits that are not a part of the California Action. (Dkt. 1). As of the time of filing, the non-California Bodily Injury Lawsuits include cases pending in Florida, Arizona, Washington, Illinois, Kentucky, Nevada, and Oregon. Although PIIC seeks a declaration on whether the pollution exclusion bars coverage for many of the lawsuits tendered by Cambria, it does not include the sixty-nine lawsuits at issue in the California Action. PIIC's Complaint states:

> 47. In this case, PIIC seeks a declaration from this Court that will apply to all Bodily Injury Lawsuits not specifically identified in Exhibit A to Cambria's Amended Complaint in the California Lawsuit, including but not limited to the Bodily Injury Lawsuits listed above, and including but not limited to all Bodily Injury Lawsuits currently tendered to PIIC and that may be tendered to PIIC in the future.

(Dkt. 1) Thus, there is explicitly no overlap with the California Action because PIIC does not ask the court to make any decision regarding coverage for the sixty-nine lawsuits that are at issue in the California Action. (*Id.*).

9

III.   **LEGAL ARGUMENT**

      **A.**     **The Court should not apply the first-to-file rule because this lawsuit is not parallel to the California Action.**

This case is not parallel to the pending California Action. The California Action asks the court to decide whether PIIC has a duty to defend sixty-nine specifically identified lawsuits. This action does not ask the Court to decide any coverage issue related to those sixty-nine lawsuits. Instead, it asks the Court to decide whether PIIC has a duty to defend or indemnify Cambria against all of the lawsuits that Cambria has tendered to PIIC but purposefully excluded from the California Action.

The fact that the two lawsuits involve a similar legal issue and these same parties does not make them parallel. Courts in the Eighth Circuit have recognized that for purposes of the first-filed rule, when determining whether cases are parallel, the "[c]ourt should focus its inquiry on whether there is a danger of inconsistent results and a duplication of judicial proceedings." *The Weitz Co., LLC v. Travelers Cas. & Sur. Co. of Am.,* No. 4:02-CV-40188, 2002 WL 31371969, at *5 (S.D. Iowa Oct. 18, 2002) (citing *Terra Intern, Inc., v. Mississippi Chem. Corp.,* 896 F.Supp. 1468, 1476 (N.D. Iowa 1995). Applied here, this test makes clear that the California Action is not parallel to this case.

The California Action and this case involve different underlying lawsuits. The California Action is limited to sixty-nine specifically and unilaterally selected by Cambria. This case does not seek any relief regarding those lawsuits. Thus, there is no risk of duplication or inconsistent decisions. Any declaration in the California Action will only

10

apply to the sixty-nine cases at issue in that litigation. Any declaration in this case will only apply to underlying lawsuits that Cambria excluded from the California Action.

Further, PIIC notes that the California Action is almost resolved. The parties brought summary judgment motions in the California lawsuit on November 13, 2025. Once the Court decides the motions, the duty to defend the cases at issue in the California Action will be resolved. Transferring this case to California would not reduce duplication. Instead, this case would need to start from the beginning, whether it proceeds here or in California.

PIIC is entitled to have the coverage dispute over these remaining lawsuits determined in the forum of its choosing. This is particularly true because Minnesota is Cambria's home state, and thus has jurisdiction over whether there is coverage for suits pending around the country. Cambria could have attempted to include all tendered Bodily Injury Lawsuits in the California Action, but it purposefully and strategically amended its complaint to limit the California Action to sixty-nine cases. As a result of Cambria's decision, PIIC was left in a position where coverage for hundreds of lawsuits will not be resolved. PIIC decided that it needed prompt resolution of the coverage dispute related to these lawsuits. This is particularly true because one of the tendered Bodily Injury Lawsuits is pending in Illinois. Because PIIC has denied coverage for a lawsuit pending in Illinois based on coverage defenses, it is imperative that it file suit to protect itself from the consequences of a denial without a declaratory judgment action. *Standard Mut. Ins. Co. v. Lay,* 989 N.E.2d 591, 596 (Ill. 2013) (holding that an insurer who denies coverage must either defend the insured or seek declaratory relief – otherwise it risks being estopped from raising coverage defenses). Moreover, this Court has general jurisdiction over Cambria,

11

and it is in a position to address coverage for the underlying Illinois lawsuit and the other non-California cases, whereas the California court may not.

**B.      The Court should not apply the first-to-file rule because the interests of justice favor Minnesota as the forum.**

Further, even if the Court finds that this lawsuit is parallel to the California Action, it should still refuse to apply the first-first rule for three reasons. First, it was Cambria's own strategic decision to exclude hundreds of lawsuits from the California Action, thereby necessitating this lawsuit. Second, this case, which involves an insurance coverage dispute involving underlying cases pending around the country, has significantly stronger ties to Minnesota. Third, the California court lacks jurisdiction to decide whether there is insurance coverage for non-California underlying lawsuits.

Here, the first-to-file rule does not apply because there is no overlap between the California Action and this lawsuit. Cambria decided to limit the California Action to the sixty-nine underlying cases that are specifically listed in its Amended Complaint. It did so because it wanted California law to apply to the question of whether the pollution exclusions bar coverage. It cannot now complain that coverage for the other tendered lawsuits should be heard by the California court. Cambria made a strategic decision to limit the scope of the California case; it cannot change its mind now that the parties' summary judgment motions are fully briefed and under advisement. PIIC should be allowed to move forward with this case and have this Court decide whether there is a duty to defend the lawsuits that Cambria specifically excluded from the California Action.

12

Second, this action should proceed in Minnesota because Minnesota has strong ties to this dispute, whereas California's connection to the dispute is tenuous. This action involves the interpretation of four insurance policies issued in Minnesota to a Minnesota corporation, via a Minnesota broker. Minnesota law should govern the interpretation of those contracts and will apply to determine coverage for the Bodily Injury Lawsuits, no matter where they are located. Given these strong connections, it is simply much more efficient and practical to litigate in a Minnesota court.

Third, PIIC is aware of no connection to California that would allow a California court to exercise personal jurisdiction over PIIC regarding the non-California lawsuits. *Daimler AG v. Bauman,* 571 U.S. 117, 119 (2014) (recognizing California court did not have personal jurisdiction over Daimler, a multi-national corporation, for action that did not arise in California); § 228:19. Nonresident plaintiffs Claim arising in another state, 16A Couch on Ins. § 228:19 (recognizing that in general an insurer is not subject to suit in one state by a resident of another state upon an insurance contract made in another state where the suit has no relation to business transacted by the insurer in the state where the suit is brought). Conversely, because PIIC issued the Policies to a Minnesota corporation, it is subject to specific jurisdiction in Minnesota for disputes regarding those insurance contracts. Of course, Cambria, as a Minnesota corporation, is subject to general jurisdiction in this case. This Court should follow the Eighth Circuit, which has refused to follow the first-to-file rule when jurisdictional questions arise in the first-filed lawsuit. *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir. 1985); *see also CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.,* 259 F.R.D. 398, 409 (D. Minn. 2009)

13

(refusing to apply the first-to-file rule and turning to transfer factors where there was evidence of forum shopping).

The interests of justice are best served by having one court interpret the coverage provided by the PIIC Policies for all cases not part of the California Action. PIIC requests that the Court decline to apply the first-to-file rule in the interests of justice due to these compelling circumstances.

## C.      The 28 U.S.C. §1404(a) Factors Weigh in Favor of Minnesota

In the alternative, Cambria argues that if the first-to-file rule does not apply, the Court should transfer this matter to the Central District of California under 28 U.S.C. §1404(a). Contrary to Cambria's assertions, all factors to be considered in connection with this argument weigh in favor of Minnesota. *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir. 1997). In making the determination, §1404(a) provides three factors which a court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. *Medtronic, Inc. v. American Optical Corp.,* 337 F.Supp. 490, 495-97 (D. Minn. 1971). Further, the Court is not limited to those factors – the Eighth Circuit requires courts to consider motions to transfer on a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Contrary to Cambria's assertions, applying the statutory factors and the circumstances of this case favors Minnesota, not California. Courts in this district have deemed the interest of justice to be the most important 28 U.S. §1404(a) factor. *Id.*; *Nelson*

14

*v. Master Lease Corp.,* 759 F. Supp 1397, 1402 (D. Minn. 1991). The interest of justice here weighs very heavily in favor of Minnesota.

In this regard, the factors to be considered when analyzing the interest of justice are (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs of the parties litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 696 (8th Cir. 1997). When these factors are applied to this case, it is clear that keeping this case in Minnesota is in the interests of justice, and Cambria's Motion should be denied.

As to the first factor, judicial economy, the resolution of all remaining claims in one forum will eliminate the need for yet another lawsuit. Cambria chose to limit the scope of the California Action to sixty-nine cases. PIIC is entitled to have a single court decide whether there is coverage for the hundreds of lawsuits that Cambria excluded from the California Action – including lawsuits pending in Florida, Arizona, Washington, Illinois, Kentucky, Nevada and Oregon – rather than be forced to litigate and seek adjudication of this issue in each and every state in which Cambria is sued. Minnesota, unlike California, has jurisdiction to make declarations regarding all pending underlying lawsuits. Further, because the California Action is almost fully resolved, nothing will be lost by litigating this case in Minnesota instead of California – both the Minnesota and the California courts

15

would have to start from the beginning when determining coverage for the remaining cases that were excluded by Cambria from the California Action.

As to the second factor, plaintiff's choice of forum, deference to plaintiff's choice of forum is "based on an assumption that the plaintiff's choice will be a convenient one". *Lewis & Clark Regional Water System, Inc. v. Carstensen Contracting, Inc.* 339 F.Supp.3d 886, 892 (2018). Contrarily, when the plaintiff's choice of forum is foreign, "this assumption is much less reasonable, and the plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 236. Cambria's choice of California as a forum was foreign, and so the assumption is much less reasonable, and Cambria's choice of forum deserves little, if any, deference.

As to the third factor, the comparative costs of the parties litigating in each forum, the courts consider the ability of the parties to bear the expenses of litigating in a distant forum and the relative familiarity of the two courts with the law to be applied. *Nelson v. Master Lease Corp.,* 759 F. Supp 1397, 1402 (D. Minn. 1991); *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.,* 931 F. Supp. 638, 642 (D. Minn. 1996). PIIC concedes that both the Minnesota and California courts are fully qualified to apply the proper Minnesota law. However, the relative ability of the parties to bear the cost of litigation in a distant forum favors Minnesota, where Cambria, and its lead counsel involved in these actions, are based and much closer to PIIC's witnesses, rather than California.

The relationship between PIIC and Cambria is centered in Minnesota. Furthermore, when the Policies were issued in 2000 and 2001, Cambria did not even operate in California. Cambria was not authorized to operate in California for another ten years after

16

the Policies were issued and expired. Thus, PIIC would have no reason to foresee a lawsuit filed by Cambria against PIIC in California. Further, litigating this matter in California will increase the cost because the California court does not have jurisdiction to decide whether there is coverage for the Florida, Arizona, Washington, Illinois, Kentucky, Nevada, and Oregon lawsuits. As a result, additional non-California litigation, potentially sprinkled throughout various jurisdictions across the country, is likely in the future based on Cambria's apparent preference for adjudicating coverage for the underlying claims in the jurisdictions where such claims have been brought against Cambria. This is clearly evidenced by its election to limit the scope of the California Action to sixty-nine underlying actions pending in California. Further, while Cambria claims that potential witnesses include the underlying plaintiffs, it is not clear why the underlying plaintiffs' testimony would be required to determine the duty to defend. Instead, the duty to defend is determined based on the allegations in the complaints – not the testimony of the claimants.

As to the fourth factor, each party's ability to enforce a judgment, and fifth factor, obstacles to a fair trial, PIIC agrees that these factors are not relevant to Cambria's Motion. As to the sixth element, conflict of law issues, contrary to Cambria's arguments, Minnesota law – not California law – governs this dispute. Cambria's Motion claims that California law governs this matter but wholly fails to address the standard for resolving conflicts of law issues. The principal place of the risk insured by the PIIC Policies is Cambria's operations in Minnesota, and several of the underlying Bodily Injury Lawsuits have no

17

connection whatsoever to California. Minnesota law clearly applies to PIIC's contractual dispute with Cambria.

A federal court sitting in diversity must apply the choice-of-law principles of the state in which it sits. *Warrant E. Johnson Companies v. United Brand, Inc.* 735 F.Supp.2d 1099 (D. Minn. 2010); *Florida State Bd. of Admin. v. Engineering and Environmental Services, Inc.,* 262 F.Supp.2d 1004, 1010 (D. Minn. 2003). Under Minnesota law, the Court's first question is whether the law at issue is substantive or procedural. *Nesladek. Ford Motor Co., 4*6 F.3d 734, 736 (8th Cir. 1995). Where a case is in federal court based on diversity jurisdiction, Minnesota's substantive law controls. *Babinski v. American Family Ins. Group,* 569 F.3d 349 (8th Cir. 2009). As a result, this Court should apply Minnesota's choice-of-law principles.

Minnesota has adopted Professor Robert A. Leflar's choice-influencing factors to determine the applicable law. *Milkovich v. Saari,* 295 Minn. 155 (Min. 1973). These are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *Id.* at 412; *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.* 604 N.W.2d 91, 94 (Minn. 2000). As to contractual disputes, Minnesota courts have recognized that the only two states relevant to the conflict of laws analysis are the home states of the parties. *Cargill, Inc. v. Evanston Ins. Co.,* 642 N.W.2d 80, 89-90 (Minn. Ct. App. 2002). No party asserts that Pennsylvania law applies, which should dictate that Minnesota law governs as the only remaining option. *See, Hawkins, Inc. v. Am. Intern. Specialty Lines Ins. Co.,* 2008 WL 4552683 *4 (Minn. Ct. App. 2008)

(rejecting argument that coverage dispute was governed by California law, where the underlying lawsuits were pending and applying Minnesota law, which was the insured's home state); *Wohlert v. Hartford Fire Ins. Co.,* No. CIV. 12-54 JNE/SER, 2013 WL 1249214, at *1 (D. Minn. Mar. 27, 2013) (recognizing state where accident occurred and underlying suit was filed was "least applicable" to the coverage dispute). Minnesota law applies to this dispute.

As to the seventh factor, the advantages of having a local court determine questions of local law again favor keeping this matter in Minnesota. A Minnesota court is best equipped to decide whether there is coverage for the underlying lawsuits because Minnesota law will apply to the declaratory judgment claims regarding the Minnesota Policies.

The interests of justice clearly weigh in favor of Minnesota. The first-to-file rule should yield to the interests of justice, and Cambria's Motion to Dismiss, Stay, or Transfer this lawsuit reliant upon the application of the first-to-file rule should be denied.

The other two §1404(a) factors which a court must consider: the convenience of the parties and the convenience of the witnesses also weigh in favor of Minnesota.  Contrary to Cambria's assertions, the plaintiffs in the underlying Bodily Injury Lawsuits would have no reason to testify in this contract dispute litigation. The testimony of individual underlying plaintiffs would be irrelevant in determining the terms of the insurance contracts at issue. Rather, the witnesses that will need to testify will do so to prove intentions in forming the insurance contracts. At the time the Policies were issued in 2000 and 2001, PIIC's representatives negotiated with Cambria's broker in Minnesota regarding

19

the terms of the Policies. The Policies were issued through The MacKenzie Agency, an insurance broker located in St. Peter, Minnesota. Thus, the witnesses involved will be those who took part in the contract formation and are not individuals located in California. Remaining in Minnesota would result in no inconvenience to Cambria, which operates in and is based in Minnesota.

## CONCLUSION

For the foregoing reasons, PIIC respectfully requests that the Court deny Cambria's Motion. This lawsuit is not parallel to the California Action – it only involves tendered lawsuits that Cambria intentionally excluded from the California Action. Likewise, even if the court looks to the first-file rule, it should not apply it. Although Cambria filed the California Action first, compelling circumstances require the Court to deviate from the first-to-file rule. This lawsuit, unlike the California Action, will allow all coverage claims regarding the Bodily Injury Lawsuits to be resolved in one case, and the clear Minnesota connection and tenuous California connections make Minnesota the best venue for the dispute. Likewise, the interests of justice and the convenience factors under §1404(a) strongly favor Minnesota. Cambria's Motion should be denied.

Dated:   January 9, 2026

/s/ Stacy A. Broman
Stacy A. Broman, SB#192454
Erin D. Doran, SB#388439
MEAGHER + GEER, P.L.L.P.
33 South Sixth Street, Ste. 4300
Minneapolis, MN 55402
Tel:    (612) 338-0661
Fax:    (612) 338-8384
Email: sbroman@meagher.com
        edoran@meagher.com

*(Attorney for Plaintiff Philadelphia Indemnity Insurance Company)*

21