**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Philadelphia Indemnity Insurance Company, | Case No. 0:25-cv-04315-JRT-JFD |
| Plaintiff, | |
| v. | **DEFENDANT CAMBRIA COMPANY LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER, DISMISS, OR STAY** |
| Cambria Company LLC, | |
| Defendant. | |

---

## INTRODUCTION

None of Philadelphia's arguments are new. All of them have been addressed and ruled on before—by Judge Frimpong in declining to transfer the Parties' coverage litigation to this District and by Judge Bryan in transferring Philadelphia's First Minnesota Action to California. The Court should grant Cambria's motion and transfer this case to the Central District of California, where the Parties' coverage litigation belongs.

## ARGUMENT

### I.     The First-Filed Rule Applies.

#### A.     This Case Is "Parallel" to the California Action.

Philadelphia argues the first-filed rule does not apply because this lawsuit is "not parallel" to Cambria's California Action. (PIIC Opp'n, ECF No. 17 at 1, 10-11.) Philadelphia's main contention is that the California Action "asks the court to decide whether [Philadelphia] has a duty to defend sixty-nine specifically identified lawsuits" and this "action does not ask the Court to decide any coverage issue related to those sixty-nine lawsuits." (*Id.* at 10.)

Philadelphia's premise is wrong. The California Action is not as narrow as Philadelphia wants to make it. It is not confined to 69 underlying cases. Cambria's opening brief already demonstrated that the First Amended Complaint in the California Action listed the underlying Bodily Injury Lawsuits then "currently at issue" and expressly alleged that the cases identified "may increase as additional suits are brought," "reserv[ing] the right to seek relief with respect to any additional suits."[1] (Cambra's Mem., ECF No. 12 at 12.) Cambria also seeks *declaratory relief* with respect to Philadelphia's duties to defend and indemnify Cambria. (Cambra's Mem., ECF No. 12 at 12.) Philadelphia's Opposition does not respond to or engage with any of these facts. (*Id.*)

Philadelphia asks the Court to "focus its inquiry on whether there is a danger of inconsistent results and a duplication of judicial proceedings." (PIIC's Opp'n, ECF No. 17 at pg. 10.) But it is Philadelphia's proposed approach – with two coverage actions pending in different Districts, regarding the same parties, same insurance policies, and same pollution-exclusion issues – which risks inconsistent rulings, duplicative proceedings and inefficiencies. To the extent that Judge Frimpong's forthcoming ruling on the duty to defend raises issues regarding its application to cases beyond the 69 cases expressly listed in the First Amended Complaint, any such issues should be for Judge Frimpong.

---

[1] Cambria has not sought amendment of the First Amended Complaint in the California Action since May 2025, to specifically reference the hundreds of additional underlying lawsuits, because the Parties' motion practice on the duty to defend started shortly thereafter, when Philadelphia filed its first brief on June 12, 2025. (12/19/25 Freeman Decl., ECF No. 13, Ex. E at #67.) Moving to amend to add an updated list of underlying lawsuits has made little sense with summary judgment motions pending and given Cambria's count for declaratory relief.

Philadelphia also fails to engage with the law on the first-to-file rule, which is that the *issues* involved in the two actions must be *substantially similar*. (*See* Cambria's Mem., ECF No. 12 at 13.) Judge Frimpong and Judge Bryan both applied this standard and rightly concluded that the California Action and Philadelphia's First Minnesota Action involved substantially similar, if not identical, coverage issues. This remains true here because it is undeniable that the pollution-exclusion issues involved in the California Action and Philadelphia's Second Minnesota Action are substantially similar, involving the same parties, same insurance contracts and policy language, and the same or substantially similar underlying lawsuits. (*See* PIIC's Compl., ECF No. 1 ¶ 31, Count I ¶ 4, Count II ¶ 9.) The first-to-file rule clearly applies.

Notably, Philadelphia does not even attempt to dispute that it made this same argument before, asserting that additionally commenced underlying cases justified its March 2024 Minnesota Action. (*See* Cambria's Mem., ECF No. 12 at 13-14.) Philadelphia's argument was rejected by Judge Frimpong, and there is no basis to revisit the issue. Philadelphia should not be allowed to serially relitigate issues it has lost.

Philadelphia's argument that Cambria is engaged in "Procedural Gamesmanship" is absurd. (PIIC's Opp'n, ECF No. 17 at pg. 7.) It was Philadelphia which filed this Second Minnesota Action the evening before Judge Frimpong was scheduled to hear argument on the parties' cross-motions for summary judgment on the duty to defend. (*See* 12/19/25 Freeman Decl., ECF No. 13, Ex. E at #84.) While Philadelphia claims a single underlying Illinois case (out of more than 400 total suits) made it "imperative that it file [this] suit to protect itself from the consequences of a denial without a declaratory judgment action,"

3

Philadelphia denied coverage for that case on September 9, 2025, more than two months before it brought this suit. (1/23/26 Declaration of Bryan R. Freeman Decl. ("1/23/26 Freeman Decl."), Ex. H.) Nor was Philadelphia "forced to bring this lawsuit" when it did. (PIIC's Opp'n, ECF No. 17 at pg. 1.) The timing makes clear that Philadelphia did so to try to gain some kind of tactical advantage at the summary judgment hearing the next day before Judge Frimpong.

Finally, Philadelphia knows full well that this case belongs in California as part of the pending California Action. More than eight months ago, in May 2025, when Philadelphia raised the possibility of seeking judicial relief with respect to additional non-California cases, Philadelphia's counsel "reserved the right to seek to file *a counterclaim*," meaning a counterclaim *in the California Action*. (Morrison Decl., ECF No. 19-1 at pg. 3 of 10 ("[I]f Cambria does elect to tender non-CA cases to Philadelphia in the future, and in the event we do not counterclaim [in the California Action] in response to your amended complaint, we will reserve the right to seek to file a counterclaim [in the California Action] to address these non-CA cases.").)

### B.    The Interests of Justice Favor California.

Philadelphia opposes application of the first-filed rule for three reasons. First, Philadelphia argues "it was Cambria's own strategic decision to exclude hundreds of lawsuits from the California action, thereby necessitating this lawsuit." (PIIC Opp'n, ECF No. 17 at 12.) But as addressed above, Cambria did not "exclude hundreds of lawsuits from the California action." (*Id.*) That is just plain wrong. The only cases Cambria withdrew from the scope of the California Action were the six non-California cases which existed as

4

of May 14, 2025.[2] And as Cambria has repeatedly explained, Cambria did so because several of those cases were being defended by a different insurer and withdrawing the tender for those few cases simplified the issues in the California Action. (12/9/25 Freeman Decl., ECF No. 13, Ex. G at pg. 42 n.15.) There is no support for Philadelphia's baseless assertion that Cambria "exclude[d] hundreds of lawsuits" from the California Action.

Second, Philadelphia argues that this case "involves an insurance coverage dispute involving underlying cases pending around the country" and "has significantly stronger ties to Minnesota, whereas California's connection to the dispute is tenuous." (PIIC Opp'n, ECF No. 17 at 12.) Philadelphia already tried this argument, to no avail. (*See* 1/23/26 Declaration of Bryan R. Freeman ("1/23/26 Freeman Decl."), Ex. I at pg. 5 ("[T]he Court should proceed in Minnesota because Minnesota has strong ties to this case, whereas California's connection to the dispute is tenuous.").) Even if Philadelphia were allowed to relitigate the same issues over again (it is not), Philadelphia's argument is obviously counterfactual. Far from being "tenuous," the connection between California and this coverage action is overwhelming. There are now nearly 400 underlying Bodily Injury lawsuits against Cambria and other defendants pending in California state courts, before

---

[2] As identified by Cambria on May 20, 2025, the six cases are: (1) *Burns v. C&C North Am., Inc., et al.*, No. 42000951CA (Bay County, FL); (2) *Evans v. Alicante Surfaces, et al.*, No. 24CV20629 (Multnomah County, OR); (3) *Jordan, et al. v. Arizona Tile, LLC et al.*, No. 2024-CV-31180 (Denver County, CO); (4) *Murguia, et al. v. 3M Company, et al.*, No. CC-20-00515-B (Dallas County, TX); (5) *Sanguinet v. Allied Marble & Granite Inc., et al.*, No. 24-2-15366-7 (King County, WA); (6) *Fuentes, et al. v. 3M Company, et al.*, No. A-25-909956-C (Clark County, NV). (ECF No. 19-1, Ex. 1, pg. 3 of 10 (identifying cases).)

California judges, being litigated on behalf of California residents by California lawyers.[3] (12/19/25 Freeman Decl., ECF No. 13, Ex. A.)

Third, Philadelphia asserts that "the California court lacks jurisdiction to decide whether there is insurance coverage for non-California underlying lawsuits." (PIIC Opp'n, ECF No. 17 at 12.) But not only has Philadelphia never challenged personal jurisdiction in nearly two years of coverage litigation in California, Philadelphia made this very argument before,[4] to no effect. (*See* 1/23/26 Freeman Decl., Ex. I at pgs. 6-7.) Ultimately, any jurisdictional challenge to the court in California should be made by Philadelphia to the court in California, not this Minnesota Court. *See Scarlett v. White*, No. 16-CV-2925 (JRT/LIB), 2017 WL 1011450, at *5 (D. Minn. Feb. 22, 2017), *report and recommendation adopted*, No. CV 16-2925 (JRT/LIB), 2017 WL 1011431 (D. Minn. Mar. 14, 2017) ("Because of these circumstances and the guidance provided in *Orthmann* by the Eighth Circuit's decision to apply the first-filed rule without first resolving the question of personal jurisdiction, this Court similarly declines to here address the issue of personal jurisdiction, as the first-filed rule clearly warrants transfer of the present case to the United States District Court for the Northern District of California"); *Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 17-3149-CV-S-BP, 2017 WL 9717215, at *2 (W.D.

---

[3] Even if Philadelphia were correct that the California Action is strictly limited to 69 underlying suits (it is not), that leaves more than 300 underlying California cases pending against Cambria, with just a handful of cases existing outside of California. (*See* 12/19/25 Freeman Decl., ECF No. 13, Ex. A & Ex. C at Ex. A.)

[4] Philadelphia's briefing on this issue is nearly identical to its briefing to Judge Bryan in May 2024. *Compare* Philadelphia's Opposition, ECF No. 17 at pgs. 13-14 *with* 1/23/26 Freeman Decl., Ex. I at pgs. 6-7.

Mo. July 6, 2017) ("[T]he prudent course is to allow the Southern District of Illinois to resolve the jurisdictional issue because the case was filed first there").

Furthermore, even if Philadelphia had not proactively litigated in the Central District of California without ever objecting to personal jurisdiction, Philadelphia does not cite any on-point authority for the novel proposition that courts slice and dice cases and assess personal jurisdiction as applied to portions of an insurance-coverage case.[5]

## II.    Judge Frimpong and Judge Bryan Have Already Concluded the § 1404 Factors Favor Transfer to California.

Because the first-filed rule applies, Philadelphia's last argument under § 1404 need not be reached. *Slidell, Inc. v. Archer Daniels Midland Co.*, No. Civ. 02-4841 MJD/JGL, 2003 WL 22050776, at *5 (D. Minn. Sept. 2, 2003) (declining to consider § 1404(a) because the court concluded transfer was appropriate under the first-filed rule).

Furthermore, Philadelphia recycles the same argument it previously advanced to Judge Bryan. (*Compare* Opp'n, ECF No. 17 at pgs. 14-20 *with* 1/23/26 Freeman Decl., Ex. I at pgs. 7-14.) There is no basis to revisit Judge Bryan's prior order, which explained:

> [E]ach of the section 1404(a) factors likely favor transfer. First, the parties do not dispute that venue is proper in both districts. Second, the only Minnesota party (Cambria) prefers to litigate in California. Third, the interests of justice would strongly favor transfer because the Central District of California has retained jurisdiction over the parallel lawsuit. Denying the motion to transfer risks inefficient use of judicial resources, duplicative litigation, and conflicting judgments.

---

[5] The only case Philadelphia cites on personal jurisdiction is *Daimler AG v. Bauman*, 571 U.S. 117 (2014). (PIIC's Opp'n, ECF No. 17 at 13.) But *Daimler* was about whether a California court had jurisdiction over a German corporation in a "Argentina-rooted case." *Id.* at 139. It is nothing like this case.

*Philadelphia Indemn. Ins. Co. v. Cambria Co., LLC*, No. 24-CV-01075 (JMB/DJF, 2025 WL 253388, at *3 n.2 (D. Minn. Jan. 21, 2025). This analysis remains just as applicable today. (*See* Cambria's Mem., ECF No. 12 at pgs. 16-24 (applying § 1404 factors).) To the extent the Court even reaches the § 1404 factors (it need not), the Court should conclude that transfer to the Central District of California is warranted.

## CONCLUSION

For all of these reasons, Cambria respectfully requests that the Court transfer this action to the Central District of California or, in the alternative, dismiss or stay this case.

Dated: January 23, 2026                    **MASLON LLP**

By: *s/ Bryan Freeman*
Bryan R. Freeman (#0387154)
Judah A. Druck (#0397764)
225 South Sixth Street, Suite 2900
Minneapolis, MN  55402
(612) 672-8200
bryan.freeman@maslon.com
judah.druck@maslon.com

**ATTORNEYS FOR CAMBRIA**